My name is Camille Becker on behalf of the petitioner. Before we begin, I'd like to reserve two minutes for rebuttal, please. The threshold issue in this case is the I.J.'s adverse credibility determination. As you know, substantial evidence is the standard for reviewing such a determination in this court. The petitioner submits that the I.J. erred in several ways when he based his adverse credibility determination on an unfair review of the record and an improper use of documents from the asylum office to impeach the petitioner. The I.J. listed several issues as the basis for his adverse credibility determination. Petitioner first submits that the I.J. clearly erred when he found that Mr. Kumar first stated that the police threatened his wife in person and then later changed his story to say that she was threatened only over the phone. Counsel, would you agree that if even one adverse credibility finding is supported by substantial evidence, your client loses? I would, Your Honor. And you don't think there's even one basis in the record? I don't. Petitioner never stated that she was threatened only over the phone. But on cross-exam at administrative record, page 170, when petitioner was questioned about this issue, he clearly stated there's been no physical harm, but they did threaten her mentally on the telephone and so on. The fact that petitioner's wife was threatened on the phone isn't mutually exclusive of the fact that she was also threatened in person. Counsel, what about the number of hours he worked for the YMCA? That was a pretty big discrepancy. Well, with that regard, petitioner first admits that the I.J. erred by using the asylum officer notes as the sole basis for discrediting his testimony. Why is that? Well, under Singh v. Gonzales, a recent case in the Ninth Circuit, the use of those notes has been deemed improper in certain circumstances. Actually, the use of the assessment should refer here, it's even a graver offense than the situation in Singh because the assessment to refer is inconsistent with the I.J.'s determination regarding What were the circumstances under which the notes were found to be impermissibly used? In this case, what were In the Singh case In the Singh case That you're quoting In the Singh case, actually, there was an assessment to refer which is more reliable than the asylum officer notes. There were no asylum officer notes in the Singh case. There was just a summarized version of what took place during the asylum. The problem that ordinarily, and we see this in cases, the asylum officer will testify, but then her notes are admissible and usable. Correct. But in this instance, no asylum officer testified. All you had were notes which were somewhat indecipherable and not – and there was no way to test them. There was no way to That's completely correct. That's – here the situation But that's not what the Singh case says, though. It's not. But if you – the Singh case says that the assessment to refer, which is – it's a typewritten summary of what was – what took place in the asylum interview. And that is actually more reliable than some handwritten notes that contain grammatically They're not inadmissible. They're not inadmissible, but you must ascertain the reliability of that source before you can impeach Was that challenged at the hearing? Was the reliability of the asylum notes challenged at the hearing? The petitioner was never offered the notes, so we didn't know what was said. Well, but was there an objection? There was no objection. Now, the social work that your client was doing involved medical supplies? There was a list of activities that the petitioner was involved in. Well, I was curious. Isn't your client in the medical supply business? He is. So whose medical supplies were the – was the YMCA giving out? He testified that he would donate some of his own medical supplies. But in addition to that, he would hire a doctor and go out on his own. This was separate from the camps. He would go out to the camps once a month. But in addition to that, he would also hire a doctor on his own, and he would go out and offer medical services to those who couldn't pay for it under the auspices of the YMCA. If the credibility finding wasn't supported by – if the adverse credibility wasn't supported by substantial evidence, if you set that aside, does membership in the YMCA qualify as a membership in a social group? Would there be, I mean, would there be a backup way that your client would not qualify for asylum? Well, here the petitioner is also arguing that he's been persecuted on account of an imputed political position or religious position. Which is it, political or religious? Religious, I assume. In that he's actively converting Hindus to Christianity. And the Shiv Sena, which is the fundamentalist Hindu party that persecuted him, in connection with the police, they have links to the police, which is supported by State Department documents, that they are linked to the government and the ruling government in his state and in other parts of India. So the two groups, the police in India and the Shiv Sena, persecuted him based on the erroneous belief that he was persecuting or converting Hindus to Christianity. But you wouldn't say – the YMCA wouldn't be a social group? I would argue that it is. Do you have any support for that? That it's a social group? Right. For purposes of asylum under our case law. Right. No, not on hand. I don't. What weight should we give the State Department reports that would state that I think Shiv Sena concentrates its activities in one particular state in India? Well, actually, the State Department reports state that the Shiv Sena has actually linked – let me find it here, one moment. Actually, there are various portions of the State Department reports that refer to the Shiv Sena and its links to the BJP, which is the governing party that has persecuted Christians who are implicated in converting Hindus. And the BJP is a dominant party in various states in India, including the state from where the petitioner is from, as well as bordering states. So you don't think there's any support for the fact that he could safely relocate elsewhere? I don't. And I particularly emphasize that the IJ's analysis here is not individualized. He merely just made this passing statement that he could relocate. And his internal relocation argument is based on his perception that the petitioner would have to go back to India and disassociate himself from the YMCA and disassociate himself from Christianity or any groups related to Christians. That's not the standard in the Ninth Circuit. You're not required to return to your country and disassociate yourself from an organization in order to internally relocate. So I believe that his analysis is improper in that regard. I would also like to emphasize that the IJ did determine that the petitioner suffered past persecution on account of his imputed political opinion. He found him incredible, but then the IJ found that he presented sufficient evidence to establish that he was involved in social programs for the YMCA and that there was some level of abuse as a result of those activities. And so his finding is inconsistent with itself. He finds him partially consistent, partially credible and finds that he did endure some abuse, but that abuse was minimal. Basically what he found is that he was exaggerating. That's what the IJ said. Correct. I might reserve the remainder of my argument for rebuttal. Thank you very much. Thank you. Ms. Maloney. May I please the Court? My name is Sarah Maloney representing the Respondent. Substantial evidence supports the immigration judge's finding that the petitioner failed to meet his burden of proof to meet his burden of proving his eligibility for relief or protection from removal. Are you defending credibility finding or not? On the contradictory evidence that the petitioner is credible. What's contradictory? I'm really having a hard time seeing it. Well, the immigration judge reasonably drew negative inferences from the cumulative effect of the inconsistencies between the petitioner's testimony before the asylum officer and his testimony before the immigration judge.  The immigration judge reasonably relied on inconsistencies regarding the petitioner's level of involvement with the YMCA? Well, he said in his application that he did the camp once a month. He said in his testimony that he worked for 30 or 40 hours a week, some of which was doing the camp and some of which was doing other stuff. So what's inconsistent about it? Well, he testified at pages 87 and 90 and 91 of the record that he held medical camps at the YMCA on Saturdays where he worked 30 to 40 hours per month. However, before the asylum officer, he said he only worked once a month at the YMCA medical camp. And that's a material inconsistency. And the immigration judge is permitted to draw a reasonable negative inference from that. He's not required to reconcile the inconsistency in the petitioner's favor under the substantial evidence. Well, if it is inconsistent, why would it go to the heart of his claim? Well, it goes to his degree of involvement with the YMCA, which allegedly is what motivated his alleged persecutors to harm him. It also goes to show that he enhanced his claim from the time that he was denied asylum before the asylum officer. But his basic story remained quite consistent. But ultimately, the petitioner bears the burden of proof. And part of establishing his burden is to prove his credibility or to, well, I guess when a witness like the petitioner provides inconsistent evidence, his credibility is undermined. And under the substantial evidence standard of review, the immigration judge is  that the asylum officer didn't testify. I mean, from reading a fair number of these records now, it's usually, or quite often, the asylum officer does testify. In this instance, she didn't testify. You have a statement. You have a narrative statement. It doesn't purport to be an actual transcript or anything. It's her version of what was said. And that's all it is. And if you're going to put that much weight on it, doesn't somebody have to be there to be cross-examined? Well, the board has held that the immigration judge or, I guess, the petitioner's credibility can be placed at issue based on statements made before an asylum officer where there's a meaningful. But these aren't statements. It's a narrative report of somebody's version of the statement. Right. There's a three-page summary and assessment to refer a summary of the statements. Sometimes there's also question, answer, question, answer. You see transcripts. There's a regulation, as I recall, that says something about the fact that there really ought to be transcripts and there ought to be swearing. There ought to be. Well, there are also four pages of notes that the asylum officer, and that's included in the record as well. And there's a presumption of regularity that the asylum officer, a government officer, is going to perform his or her duties, you know, accurately and, you know, make an accurate report of what transpired at the asylum interview. And the Petitioner It's a statement about the amount of time he worked in the notes? Well, it's included in the summary, in the assessment to refer. I understand that. But I'm asking what's the relevance of the notes if it's not in the notes. Yeah, I don't see it. I can't really point to it. Are you aware of any regulation or case from the BIA or any court case that says that it's impermissible to admit the notes of the interviewing officer? No. In fact, in matter of SS, which is a board decision, that's where the board determined that notes such as these or, I guess, any kind of record, meaningful record of what transpired at the asylum interview is sufficient to place the Petitioner's credibility at issue. And it goes on to say that the Petitioner bears the burden of proof. Here, the Petitioner did not provide any corroboration to support his new contentions before the immigration judge regarding his level of involvement with the YMCA, regarding the nature of his injuries, and regarding whether his wife has continued to be threatened in India. And he's presented nothing to undermine the asylum officer's report other than his mere testimony, which is inconsistent. If we were to find that the adverse credibility finding is not supported by the YMCA, can the case be remanded to allow a full review of Mr. Kumar's claims on the merits, or can we do it on this record? It can be done on this record. The immigration judge went on to make an alternative finding on the merits of the Petitioner's claim, and he found that the incidents which the Petitioner claimed happened to him were insufficient to rise the level of persecution, and that the Petitioner failed to show an objective basis for his fear that he'd be persecuted in India on account of his YMCA social work activities. The second part I can understand. The first part, how can that be? When he testified that he was detained for at least once for six days and beaten periodically and another time for a while and so on, how could that possibly be right? Well, not all forms of mistreatment rise to the level of persecution. I understand that, but imprisoning somebody and beating him several different times would seem on any case understanding of our case law to rise to persecution. The second issue I understand is perhaps debatable. The first one I don't see how it's even debatable. This Court has held that a detention by the police and a beating where the ---- For six days repeatedly? Well, it's a case-by-case basis that the agency needs to adjudicate these. The Court found in Prasad that the evidence in that case of the detention and the beating wasn't so overwhelming. How long was the detention for? It lasted a day. How was the beating for? It didn't say. I know that no severe injuries resulted as there were no severe injuries in this case. At one point for his injuries, he had a doctor's report regarding his injuries. The second time he was in prison for six days and beaten. That just can't be. His injuries in this case, I mean, at best, you know, if we accept one account of his three separate accounts of his injuries, is a soft-tissue injury. And there's no evidence that he suffered any injuries following his detention. And the agency reasonably applies that. Is there any case that has similar facts that has been found to not have persecution? The closest that I know of is that Prasad case. That's a one-day detention. What about the relocation? I asked counsel for the appellant on that issue of what the country reports say about whether he can relocate somewhere else. What's in the record about that? Well, the petitioner fears persecution on account of his YMCA activities, social work activities. He only participated with the YMCA. He only associated with them for a year in Lucknow. And he's basically disassociated himself with the YMCA since then. There's no evidence in the country conditions reports that the Indian government persecutes social workers, which is what he says he wants to do when he goes home, and which is why he fears. Well, now, has he does that? He has a history of social work, is that correct? Prior to beginning his one-year stint with the YMCA. All right. And his wife also does this? She does. She's a social worker. And has she been back since? She's been back since July 2001, and she hasn't suffered any physical harm. There's no systematic mistreatment of YMCA workers, of Hindus, Hindu YMCA workers. The petitioner worked for 16 years without any harassment in social work. If that's what he wants to do when he goes home, the immigration judge reasonably found that he could do it anywhere in India. Actually, there isn't even a finding by the IJA that if this was credited, it doesn't amount to past persecution. The way we read the decision is that the transition occurs at 52 and 53 of the administrative records, and it's not a very clear transition. However, it really doesn't change the nature of the structure of the and the content of the IJA's decision, because clearly he finds them not credible. Well, it changes the analysis, because it changes the answer to Judge Callahan's question. If there was never a determination of whether there was actually past persecution, that matters to the ultimate decision of whether there was a well-founded fear of future persecution. And if there wasn't such a finding, then we would have to remand to get one. Well, that's true, but there is a finding on page 53 that there's no past persecution. It's in the middle paragraph. You talk about the first full paragraph. On balance, the Court does not find the evidence sufficient to establish the Respondent suffered past persecution. Right. That's because he has an adverse credibility finding. But then once he gets over that, he doesn't he says because the evidence simply is not sufficiently credible to establish the Respondent's claim. But if you get over that, there's no finding of whether if he's credible, there was past persecution. Right. Well, we read this paragraph to say that on the merits he didn't suffer past persecution. The incidents don't rise to the level. However, even if the Court found that this went to the adverse credibility finding in this paragraph. Well, it says it does. The evidence simply is not sufficiently credible. That's what it says. Even if it were to go to the adverse credibility finding, it's still presumed that the immigration judge didn't find that the events described arose to the level of past persecution. Because he goes on to analyze it under the well-founded fear construct. Well, that's right. Because he didn't believe the guy. And then he went on to about past persecution. And then he went on to about well-founded fear. Counsel, how do you interpret the judge's statement that the level of abuse alleged is minimal even at best in this case? Is that an adverse credibility finding? No. That goes to whether the degree of harm is sufficient to constitute persecution under the INA. Thank you. Thanks. What is your position about whether if we reverse the ‑‑ if we were to reverse the adverse credibility finding, we would have to remand for further findings? I think that the I.J. actually determined that even in the best scenario, the level of abuse was minimal, that he didn't suffer past persecution, which we argue is clearly erroneous. Well, but if he says even in the ‑‑ is he saying ‑‑ is the I.J. saying there, given, you know, if I give you credit for everything that you said as being true, there still is not past persecution. The I.J. stated. It's just ‑‑ is it 52? We're fine. It's on page 53 of the record. I believe that's right. Sorry, but I'm not seeing it. That's okay. The level of abuse alleged is minimal in this case. Okay. Go ahead. Okay. You found it? But I do want to emphasize that Mr. Kumar was beaten by Hindu fundamentals with sticks, fists, and then kicked with boots before they threatened that they would burn him and his family alive. Then the police detained him for six days, during which time he was beaten with sticks, leather straps, and threatened with death. If that's not persecution, I'm not sure what is persecution. Under any conceivable definition of persecution in this circuit, it's clearly ‑‑ Well, what about the relocation? That is a finding. I mean, that is definitely a finding by the I.J. Was it made on appropriate grounds? Does it matter whether ‑‑ why not? It wasn't. First of all, the I.J. bases it on his wife's return. She's been threatened both by phone and in person. And further, she didn't go to a Hindu gathering and state that ‑‑ and expose herself to the further risk of harm by declaring that she was a YMCA member and that she wasn't converting Hindus to Christianity. When Petitioner did that, his harm in India was significantly increased. He was persecuted more substantially at that point. And the I.J. completely ignores that in his analysis of this issue. Thank you, counsel. Thank you.
judges: Berzon, Rawlinson, Callahan